IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re:<br><br>Auto Masters, LLC, *et. al.*,<br><br>Debtors. | Case No. 3:17-bk-07036<br>Chapter 11<br>Jointly Administered<br>Judge Walker |

## DECLARATION OF HAYWOOD MILLER

I, HAYWOOD MILLER, hereby declare as follows:

1. I am over the age of 21 years, and fully competent to testify in this case. All of the statements I have made herein are true and correct to the best of my personal knowledge, information and belief.

2. On October 20, 2017, this Court entered an Interim Order (i) Authorizing The Debtors To Use Cash Collateral, (ii) Granting Adequate Protection, And (iii) Scheduling A Further Hearing ("Interim Cash Collateral Order"). Unless stated otherwise, terms defined in the Interim Cash Collateral Order will have the same meanings when used in this Declaration.

3. I am a managing director of the financial advisory firm Berkeley Research Group, LLC ("BRG"). A copy of my current CV is attached to this Declaration as Exhibit "A".

4. In September, 2017, BRG was retained on behalf of Capital One as a financial advisor with respect to the Capital One Loan Obligations owing under the Credit Agreement and related matters. I am the person at BRG primarily responsible for BRG's work on this engagement. In addition to my personal experience, the BRG team for this engagement under my supervision includes personnel who have substantial executive experience with sub-prime auto finance companies.

5. Among other things, BRG has been asked to analyze issues relating to the Debtors' financial performance and condition and the Collateral for the loans owing under the Credit Agreement.

6. Under the Interim Cash Collateral Order, the Debtors are required to cooperate with an immediate investigation by Capital One and its financial advisors regarding, among other things, an evaluation regarding the Capital One Collateral and other financial matters regarding the Debtors' current business operations, projections, and other matters. See Interim Cash Collateral Order at p. 11; Section 8.

7. The Interim Cash Collateral Order also requires, among other things, that:

 (i) each Debtor sequester and segregate all of its Cash Collateral in one or more Cash Collateral Accounts;

 (ii) when any Debtor receives any proceeds or other Cash Collateral, that Debtor immediately deposit all such proceeds or funds into its Cash Collateral Account(s); and

 (iii) no Debtor use its Cash Collateral to pay any obligations of any other Debtor.

See Interim Cash Collateral Order, Page 8.

8. Beginning on October 23, 2017, my colleagues Sal Tajuddin and Andrew Cowie and I began our investigation and interviewed the Debtor's Chief Executive Officer, Mark Janbakhsh, the Debtors' Chief Financial Officer, Steve Piper, and the Debtors' Loan Portfolio and Collection Manager, Christian Quiroz (collectively, the "Debtors' Officers"), at the Debtors' premises in Nashville, Tennessee.

9. BRG's investigation is in its initial stages and has been ongoing for only three days (October 23-25, 2017). BRG has made a number of information requests to the Debtors' management that remain outstanding. This Declaration describes certain of our findings and observations at this time.

### Lack Of Explanation For Overstatements Of Consumer Loans

10. The Debtors have been unable to provide an explanation for the material overstatement of the amount and status of their consumer loan paper portfolio (which resulted in a reduction of more than $35 million in the amount of collateral reported on their Borrowing Base certificate to Capital One as of September 30, 2017 from the amount reported in their Borrowing Base certificate as of July 31, 2017.

11. It is a common and fundamental industry practice for consumer vehicle loans to be tracked by each financed vehicle's unique vehicle identification number (VIN). The Debtors did not follow this basic practice, and because of this failure, Debtors assert that they were reporting many, many duplicate loans on the same vehicle as active loans.

12. BRG has not received complete records from Debtors regarding this issue. However, an overstatement of this magnitude cannot be explained by mere accounting errors. Among other things, Debtors assert that this "error" existed in their system for a long period of time but was only recently discovered. However, the Debtors are in control of their financial records and information (including what information they report to third parties), and if Debtors were employing even basic internal management oversight, they would know of the existence of duplicate loans being reported within the portfolio, in particular duplicate loans in the numbers asserted by the Debtors.

### Lack Of Information On Current State Of The Portfolio

13. In addition to the issues discussed above, the Debtors have still not fully identified what consumer loans in their portfolio are active, or the payment status of such loans. BRG has requested, but has not yet received, the records necessary for this analysis (and many of the records supplied to date contained multiple errors).

14. Although contractually required to do so, the Debtors failed to deliver vehicle titles and Consumer Paper included in CONA's Collateral to a single custodian. Instead, Debtors' Officers report that the vehicle titles and the loan documents for the consumer vehicle loans are often held at the various dealerships and not at a central depository. Accordingly, there

3
Case 3:17-bk-07036    Doc 78-1    Filed 10/26/17    Entered 10/26/17 11:49:45    Desc
Declaration of Haywood Miller    Page 3 of 8

is no central location to review and confirm the documentary status of the consumer loan portfolio.

15. The Debtors also do not record reserves on the portfolio for possible regulatory limitations on sales proceeds from repossessed vehicles.

16. In short, basic information is lacking to support even the Debtors' new-found assertions regarding the value and status of the consumer vehicle loans or other assets.

### Non-Compliance With Interim Cash Collateral Order

17. A substantial amount of the payments received by the Debtors with respect to consumer vehicle loans are made in cash that is tendered by the consumer at the locations of the Dealership Debtors. The Debtors' Officers stated that the Debtors' only record of loan payment comes from clerical input into their dealer management system ("DMS") that maintains detail on all open loans. Responsibility for oversight of the clerical inputs into the DMS is fragmented across the various collections managers at each of the Dealership Debtors.

18. Despite the fact that the usual and customary practice with respect to loan portfolio management in the buy-here-pay-here industry is to reconcile cash collections (principal, interest, down payments and other) to the information in the DMS in order to eliminate duplicate loans and other recordation errors, the Debtors' Officers stated that no such reconciliations have even been done by the Debtors. Accordingly, the Debtors' reporting of loan activity is inherently unreliable, there is a high risk of misrepresentation of loan payments, and the Debtors cannot produce an audit trail of payment and other activity on the loans.

19. The Dealership Debtors collect payments made on consumer vehicle loans owned by the Finance Company Debtors. However, such payments are not being immediately remitted by the Dealership Debtors to the Finance Company Debtors that own the consumer paper with respect to such loans.

20. The Debtors' Officers have acknowledged that, despite the requirements of the Interim Cash Collateral Order, each Debtor is not segregating all of its own Cash Collateral in separate accounts on a Debtor by Debtor basis.

21. Despite requests from BRG, the Debtors also have not demonstrated that Cash Collateral of individual Debtors is not being used by other Debtors.

### Lack Of Security In Basic Financial Systems

22. The Debtors do not have adequate controls in place to protect the integrity of the Debtors' electronic system for tracking payments on consumer vehicle loans. The Debtors' Officers stated that most of the Debtors' many employees have access to the Debtors' computer systems in which originations of, and payments on, consumer vehicle loans are tracked. The Debtors' Officers did not provide any evidence that the Debtors have implemented or enforced any policies, procedures or other safeguards that restrict access to information on consumer vehicle loans to a limited number of key individuals. As a result, there is inherent risk that the information in their computer systems is inaccurate and/or can be improperly modified, deleted or otherwise corrupted.

### No Meaningful Change In Practices

23. Despite the numerous and basic financial and reporting deficiencies already identified in the earliest stages of our analysis, it does not appear that the Debtors have made any meaningful changes to their financial systems or controls since the filing of the bankruptcy cases.

5
Case 3:17-bk-07036   Doc 78-1   Filed 10/26/17   Entered 10/26/17 11:49:45   Desc
Declaration of Haywood Miller   Page 5 of 8

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 26, 2017.

_____
Haywood Miller



# Haywood Miller

Managing Director – Restructuring and Transaction Advisory
Washington, DC

**Contact**
D 202.909.2798
M 301.807.0603
hhmiller@thinkbrg.com

**Industry Experience**

Contracting Services – Trade and Government
Financial Services
Food and Agriculture
Healthcare and Pharmaceuticals
Manufacturing, Metals and Mining
Telecommunications

**Selected Public Cases**

Advanced Aluminum Products, Inc.
American Capital, Ltd.
Arguss Communications, Inc.
**Dynavox, Inc.**
**East Ohio Regional Hospital**
KV Pharmaceuticals, Inc.
**Mee Memorial Hospital**
New Enterprise Stone and Lime, Inc.
**Ohio Valley Medical Center**
Parker Companies
**ReGear Life Sciences, Inc.**
**Reliq Pacifica Hospital**
**Reliant Senior Living**
**Renewal Treatment Centers, Inc.**
**Roseville Senior Living**
**Sava Senior Care**
**South Franklin Circle (Judson)**
Transit Funding Associates
Ultimate Nutrition, Inc.
Versar, Inc.
**Virginia United Methodist Healthcare**
**Walnut Hill Medical Center**
**Wesleyan Senior Living**

**Areas of Expertise**

Haywood Miller has a diverse legal and business career combining the legal and accounting skills of being an expert and the practical business experiences to give credibility to any role including receivership, Chief Restructuring Officer (CRO) or business-related testimony.

- **General Counsel** of three public companies on AMEX, NASDAQ and NYSE. Two investment companies (BDC '40 Act Companies) and one operating company
- **Operational executive** with two publicly-traded investment companies investing in private companies on all levels of the capital structure
- **Restructuring firm executive** acting as a Chief Restructuring Officer (CRO) with government contractors (both public and private) and other businesses and also working with numerous distressed companies many with municipal bond financing issues as part of the restructuring.

**Experience**

Mr. Miller has over 30 years of professional experience as a business owner, workout professional, private equity and debt investor and securities and mergers and acquisitions lawyer. He has acted as CRO and responsible person on a number of engagements and has testified and been asked to testify in bankruptcy court as an expert.

With BRG Capstone and Capstone Advisory Group, Mr. Miller has worked on dozens of engagements involving healthcare, trade and government contractors, pharma, nutraceutical, product and equipment manufacturers, restaurant chains, insurance companies and brokers, quarry and mining businesses, media and publishing and other companies in financial distress.

He was previously a co-founder and executive vice president of Arguss Communications, Inc. (NYSE: ACX), a telecommunication infrastructure business. He led a restructuring and closed a share exchange between Arguss with Dycom Industries, Inc. after dramatic operational changes required by the 2001 telecommunications industry upheavals.

Mr. Miller additionally co-founded Argan, Inc. (NASDAQ: AGX) and was executive vice president and general counsel. Argan was a manufacturer and marketer of nutraceutical products as well as a government contractor working on telecommunications infrastructure for the US and local governments and telephone and cable companies. Argan currently is a design-build engineering firm and contractor for alternative energy projects.

Mr. Miller was the executive vice president and general counsel with Jupiter National, Inc. (AMEX: JPI), a venture capital investing business development company. Mr.

restructuring \ litigation \ valuation \ intellectual property \ fund services \ bank regulatory \ capital markets
Case 3:17-bk-07036   Doc 78-1   Filed 10/26/17   Entered 10/26/17 11:49:45   Desc
Declaration of Haywood Miller    Page 7 of 8

EXHIBIT A

Miller also worked as a principal with the MCG Capital Corporation, a mezzanine financing business development company, and was a managing director at Advisory Associates, Inc., a McLean, Virginia–based merchant banking firm.

Mr. Miller also founded, and was president and CEO of, Renewal, Inc. Renewal was a greenfield developer and operator of an eating disorder treatment center. He raised funds, zoned and licensed a facility in Frederick, MD and worked extensively with the managed care participants and various other payors and referral sources.

Mr. Miller was a securities and mergers and acquisitions lawyer at The Venable Firm.

**Education and Affiliations**

Mr. Miller has an A.B. in Government from Harvard University and a J.D./M.B.A. from the University of Maryland. He is a Certified Insolvency and Restructuring Advisor (CIRA), a member of the American College of Healthcare Executives and the Healthcare Financial Management Association. Mr. Miller is a current member of the Harvard Athletic Hall of Fame.

restructuring \ litigation \ valuation \ intellectual property \ fund services \ bank regulatory \ capital markets
Case 3:17-bk-07036   Doc 78-1   Filed 10/26/17   Entered 10/26/17 11:49:45   Desc
Declaration of Haywood Miller    Page 8 of 8